We thank counsel on both sides for your argument. The next case up for argument is J. R. v. Ventura Unified School District. Go ahead, counsel. Morning. If it would please the court, Molly Thurman, on behalf of Ventura Unified School District Appellant, I'd like to reserve two minutes for rebuttal, please. The issues on this appeal are simple and straightforward, but they have become confusing and complicated due to findings which fall so far outside the range, the broad range, of permissible conclusions as to be beyond the pale of reasonable justification under the circumstances. And this isn't a matter of insufficient evidence. This is a question of no evidence at all, or findings that directly contradict the undisputed evidence. And yet, the decision is published. And so students rely on this decision to make arguments that the statute of limitations does not begin to run until a diagnosis is obtained that satisfies them. And district courts are thereby forced to address those arguments and to try to distinguish facts that don't necessarily need to be distinguished under the circumstances. A great example is the case that follows this one, TMJ, in which that student argued that the statute of limitations did not begin to run until nine years after he left the school district and obtained a diagnosis. And that district court was forced to distinguish findings that, again, just have no basis. The first issue is, when did the statute of limitations begin to run? And this court has been clear from MM versus Lafayette to Avila versus Spokane, and most recently to Alba Hathaway versus Santa Barbara Unified School District. The statute of limitations begins to run when the parent knows or has reason to know that the student's education is inadequate. The district court, however, said it was not convinced that the statute of limitations begins to run when the parent knows or should know that the student's education is inadequate. It's impossible to reconcile those two. But the district court went even further and said the statute of limitations does not begin regardless of the parent's knowledge. The parent does not have knowledge of the diagnosis that might explain why the student's  So the standard is new or should have known, and the should have known part is very tricky. It's highly fact-specific. So in your view, how does that apply to the facts of this case? So the should have known applies to the education was inadequate. And in this case, the parents had the undisputed evidence establishes that the parents knew, had knowledge of JR's academic deficiencies, his behavioral issues, his cognitive problems. They repeatedly requested more assistance for him. They requested more assessments. They repeatedly said they were not getting the support they needed. Mom threatened a lawsuit. Mom hired a private- So that was in 2018? That was 2018, but Mom said he specifically told the district at one point he had not made any progress in reading since second grade. The parents were actively participants in IEPs. Right, that's why I want to make sure that I understand what your position is. It can't be from the very beginning because just because a child's not doing well, it can't be that the statute of limitations is triggered for struggles that may take some time to resolve. No, that's correct. As they often do in these sort of cases. So in your view, was it in 2018 when Mom expressed dissatisfaction and said she was contemplating a lawsuit? Is that the time frame that you'd like us to fix on? That would be the very, very latest because it is absolutely indisputable at that point that Mom was threatening legal action. There's no question after 2018. But even before 2018, and it goes beyond the student isn't doing well. Students often make that argument. Oh, it can't be that they just weren't doing well. That is not the standard. So what before 2018 would have told the parents that their child was not receiving a fate? In the IEP meetings, the mom repeatedly asked for more assistance. She asked for more assessments. In 2015 and in 2018, both those last two triennial, there's a lot of discussion about his failure to progress, the things that the BUSD are doing are not working. This isn't just a kid is struggling. This is a kid whose mom believes the education is inadequate and he is not making adequate progress. This is kind of getting to the nub of the issue, which is just kind of how inadequate does it need to be? I take your point that by 2018, what I hear you to be arguing is that whatever the standard is, it was met. But in terms of trying to identify what the rule should be for these kinds of cases, this is an important issue. There are times where a child struggles, even a child who's not disabled struggles and we don't expect people to immediately file lawsuits. And I imagine that students who have some of the disabilities like this child did here have many days of struggles and we don't want them to be thinking every day, do I need to file this lawsuit now? But at some point, your position would be at some point, you're gonna have to do that short of getting a new diagnosis. So what would be the test you would advocate? I know you say inadequate education, but are there modifiers you would put alongside that to help guide this in this case and future ones? Well, we can fall back to the definition of free appropriate public education and the cases that say when a student is denied access to a FAPE, that that would trigger, or that would be a violation of the IDEA. So it would be the same type of standard that I think it's Paradise Valley. I mean, there's a litany of cases all the way back that discuss the access to a FAPE. That would be the standard. Meaning the education is so inadequate that it violates the statute? Yes. Okay. What about the tolling exceptions? The statute provides for two very specific tolling exceptions and the district court in this case relied on J.R.'s expert's opinions, which is fine. But in order to support those conclusions, the district court relied primarily on the 2015 and 2018 psychoeducational reports and the VUSD employees who prepared those and who testified at hearing. As the 2015 report prepared by Katie Bailey, the district court found that she did not provide parents with a diagnostic considerations page from the BASC-2. That is not a statutorily required document. Even J.R.'s own expert did not testify that that document should have been provided to parent, much less that it must have been provided to parent. There was no evidence as to what information on that document was necessary for parent to know to file a due process complaint. So the court just chose this random document and said this needed to be provided to parents. The court also said that Katie Bailey's report was inadequate and that it said simply that J.R. sometimes behaves in ways that appear strange. It says that in that multi-page, very comprehensive report, but it's not attributed to data or assessments or Ms. Bailey's conclusions. It's attributed to one of J.R.'s teachers who told her that. And yet the district court relied on this to find that either a misrepresentation or that statutorily required information was not provided to parents. In the 2018 assessment. So was there any statutorily required information that was not provided? No. And the district court acknowledged that. In its decision, the district court said, well, that may be true, but there's information that parents would want to have, basically. And that's the, you know, the IDEA says the statutorily provided information. There's statutorily required information. What about the 2018 statement that J.R. does not appear to meet the eligibility criteria for autism? That is a great point. Jana Woodruff, in the 2018 report, very clearly laid out why she considered autism and why she did not suspect autism. And the district court seems to have replaced the word suspected autism with a standard of considered autism. And that is not in the code. It's not consistent with definitions of language. There's a big difference between consideration of something and a suspicion of something. And any professional would have to consider a broad array of diagnoses or of disabilities before they narrow down to those that are suspected and finally come to conclusions. And yet the district court used the consideration of, and appears to have used that as a suspicion of, which it simply was not, and she explained why she did not suspect it and why she considered it. So it was not a specific misrepresentation that the school district had resolved the problem forming the basis of the complaint, because why? That's a great question because there's absolutely no evidence anywhere that anybody represented that JR had been assessed for autism. No one believed he had been assessed for autism. Mom didn't even testify that anybody told her he had been assessed for autism. So where the district court got that conclusion is almost impossible to know. There's simply not in the record anywhere. What if, I mean, it seems reading between the lines that maybe the district court believed that that statement was just a reckless statement, that the district had to have had a suspicion that he had autism and it was reckless to tell the parents that he doesn't meet the eligibility criteria when they had not done a sufficient investigation. I'm kind of paraphrasing, but I think that's kind of what the district court judge was trying to get at. District court used the term, Woodruff summarily concluded he did not meet the criteria for autism. There's nothing summarily about Jana Woodruff's 2018 psycho-ed assessment report. She goes into great detail. She lays out every assessment that was given. She lays out in great detail why she considered autism. Lays out in great detail why she didn't suspect autism. There's nothing reckless about that. The district court may have disagreed with her, but she explains why she considered it and why she did not suspect it. And nobody else suspected the term reckless or a finding of reckless as to a suspicion is simply not supported anywhere in the record. J.R. was assessed by several individuals over the many years he attended school in the district. He was taught by even more individuals over those many years. And he was provided services and supports by even more individuals over those many years. Not one of those individuals suspected autism. Is it disputed though that today that it's agreed he has autism or you dispute that? He was found eligible under, at his new school in Texas, he was found eligible in 2021. I don't think that that was ever argued or disputed and I don't think there's adequate, I don't think that's in the record. It's not the very first, Ms. Thurman, the very first reference to autism is in the 2018 report, correct? Correct. And so would a reasonably diligent parent challenge that in terms of having then retaining an expert at that point in time? Not only would a reasonably diligent parent have challenged that, but this parent did retain an expert to privately assess J.R. And that expert did not suspect autism either. But ultimately in 2021, an expert did suspect autism at that point in time. That's correct. A different expert. A different expert. Diagnosed shopping. In 2018, I know the expert that the parent hired did not suspect autism, but did that expert test him for autism, apply the test that would have uncovered that condition? I don't know what test that expert assessed him for. He was not assessed for autism because no one suspected autism. Had that expert on the data that on his evaluations and based on J.R.'s experts opinions and conclusions, the data they had based on other assessments should have led them to assess for autism. So that expert, or that psychologist did assess him. Never mentioned autism, never suspected he should be assessed for autism. So whether he did or not. Right, no, I know that was the result, but it wasn't clear to me from the record whether he was actually tested for that condition. And then the expert concluded that he wasn't autistic or whether he just wasn't tested for it at all. I think the record would be, as the district court made clear, that parents had all this huge body of information and facts except for the diagnosis of autism. So the conclusion probably is that nobody said, hey, test for autism. Or we think he has autism. Because the district court several times noted, you know, well, even though parents knew this, that, and the other thing, knew everything, they did not know autism. What's the status of this matter in terms of the funding of the trust? So I understand there is an order to fund the trust. Has your client paid into the trust? No, and that's the subject of the second appeal, the appeal of the July 30th order. The propriety of a special needs trust for the deposit of compensatory education funds and disbursement of those funds is a great issue. It's new, it's really interesting. There's not a lot of case law on that, but the case law that is out there, coupled with the difficulty the parties in this case had coming up with a document that satisfied or met the requirements of special needs trust and the IDEA and also complied with the court's order, would certainly dictate in favor of a finding that it's not a proper vehicle for the disbursement, for the deposit and disbursement. You're saying a trust can never be used? Not a special needs trust, not a special needs trust, which has its own requirements and restrictions, is not, would not be the proper vehicle. What would be the proper vehicle? A simple blocked account in a bank, a simple compensatory education trust or compensatory education fund, there's any number, but what became clear when we got the document was the requirements of the special needs trust. J.R.'s attorney very specifically, in all capital letters, said there can be no limitations on the trustee's discretion in disbursing funds. And yet, this is compensatory education funds under the IDEA, they have to be used for what the court ordered specifically. You can't just say, here's a bunch of money, disburse it for his needs. And that kind of, that's at the heart of the issue. So one has been created, but just hasn't been funded and I know you've preserved your objections to that. Yes, we have, one's been created, but it has not been funded. Did you want to save the remainder of your time?  Thank you. Good morning, your honors. May it please the court, Andrea Marcus for J.R. I would like to say that, I guess what I'd like to do first is just address some of the things my friend from the other side just mentioned and then open it right up for questions. I would like to say that this case is really about known or should have known initially and then we get to the exceptions. The primary exception applying here is misrepresentations that the issue had been resolved. In this case, that J.R. had been assessed in all areas of suspected disability and specifically for autism. And that in deciding this case, the district court created an incredibly robust record of his findings. They were primarily based on the findings by the ALJ. He did not reverse any credibility findings, but he addressed some of the factual underpinnings of the findings of known or should have known and misrepresentations that the ALJ did not address. And those include that the BASC scores specifically said that autism was likely or even very likely in some of the testing measures used by the school district. In 2018? No, throughout, from beginning in 2012. And in fact, the BASC was given in 2012, 2015, 2018 and then he passed. But what does this go to? To the misrepresentation? How does this affect the new or should have known? Well, it affects the new or should have known because this court has recognized since Amanda J. in 2001 that a parent can't meaningfully participate in educational decision makings or even an IEP without being fully informed about autism. Now, how can we decide that and then correspondingly decide that they should know or should have known that they disagreed with the IEP based on the knowledge that they didn't have such to the point where they should then bring action? Well, I mean, the district court seemed to say that this really turned on when the parents received the diagnosis of autism and that essentially everything that had happened up to that point was not enough to meet the new or should have known standard. Do you think that should be the law? In this case, it should be because in this case, there was no mention of autism save the one assessment done by the school in 2018 where it was said it was ruled out basically. In 2018, the school assessed and the assessor, Ms. Woodward, gave extensive analysis of why she didn't find autism and even cited to two assessments that she gave that she conceded on testimony, didn't actually assess for what she said they did and she didn't actually assess for autism. You'd have to have a level of expertise that's very unreasonable to hold a parent to know that not only had she not actually ruled out and assessed autism given her extensive report. I think my struggle with this case is that in focusing so much on the parents' actual knowledge when they got the diagnosis of autism in 2021, I think the district court seems have gutted the should have known portion of the test, right? Because even no one had suspected autism and even the expert hired by the parents in 2018 didn't suspect autism. So how do we apply the should have known part in this particular case? Well, the should have known is, well, let me talk a little bit about that independent assessment that she saw in 2018. The mother was repeatedly told at each IEP that he was making progress. From the very beginning, the USD established the level of progress to be expected to be quite low because he had a significant learning disability and speech impairment. It's also important to note that although behaviors that indicated autism symptoms were prevalent throughout his records, he was never a behavior problem in the sense of being aggressive or disrespectful or anything. He had autistic behaviors and symptoms of autism. So going back to the assessment that was sought, the mother, the one thing that she was concerned about was the lack of reading. So she didn't have reason to disagree with the district's assessment. She sought a second opinion. She went to an independent psychologist, not a school psychologist, who she asked to address his dyslexia and possible ADHD. That's all that assessor did. Yes, that assessor's not held to the same standard of suspecting a disability and therefore comprehensively assessing it that the school district is under Timothy O. Right, but I mean, the issue here is not what the school district should have suspected. It's whether the plaintiffs knew or should have known, right? So I mean, it seems that some of your argument is blurring the merits of an ultimate IDEA claim with the question here, which is just, is this timely? Well, without the information that the parent would have gleaned had it been properly assessed, they were left in the dark, not only as the ALJ decided and the district court upheld for the purposes of participating in an IEP meeting, but for participating in an IEP that they would then disagree with. But doesn't the statute kind of give us the standards for that, right? It recognizes there's this possibility, but it's very specific. It talks about specific misrepresentations or the withholding of information that you're statutorily required to provide. It's not a broader tolling rule. Right, but I'm talking about before we get to the exceptions. How can we decide that a parent doesn't have enough information to participate in an IEP meeting and correspondingly decide that they have enough information to file a complaint because they disagree with it? Well, we asked your opposing counsel what the rule should be, the principle that we need to enunciate to guide the district courts and the litigants in these sort of situations. And counsel said that the rule is when the facts are sufficient for the parent to realize that there's a failure to provide a free and appropriate education. So at that point, that's when the parents should have essentially filed a due process claim. Do you agree that that's the principle? Well, no, I would cite to a different, I would cite to the more recent Andrew F. Supreme Court case, which identified what a FAPE is, which is services and IEP reasonably calculated to provide educational benefit to the child given their circumstances. Right, so at the point, whatever a FAPE is depends on the needs of an individual child. But at a point where the parents with reasonable diligence realize that a FAPE is not being provided by the school district, does the statute get triggered from that point on? Well, they have to understand the circumstances to know that a FAPE is not being provided. As I said, in this case, my client was repeatedly told that her son was making progress, even great progress, but that it was gonna be slow given his disability. She didn't understand the circumstances that he had unidentified autism, that the symptoms were of autism. Right, but I mean, it seems that then the standard you would be advocating for would be the parents have to know of the correct diagnosis. And the difficulty with that position in addition to running into the should have known part of the statute is that we have a case, including this one, where we're talking about years after the fact, we're talking about filing claim nine years, you know, he's in high school, we're talking about his education in kindergarten. It's gonna create a lot of difficulties for litigating a case like this, if you can do that. Every time somebody gets a new diagnosis, it would essentially restart the clock. Well, no, all the school has to do is actually assess the child in all areas of suspected disability and do so comprehensively as the IDEA contemplates. Now, one thing that I did note in VUSD's briefing on this case, they claimed that it would be, you know, a huge burden to have to assess, to have had to assess in all possible areas of suspected disability. They actually promised to do that virtually in JR's case. In every assessment plan his mother signed, almost every possible area to assess for. Right, so test in every area of suspected disability, the problem is no one suspected autism. But under Timothy O, the district had a responsibility to assess given the symptoms. So they suspected, the mother did not. Under Timothy O, under these circumstances. You're saying on these facts, the school district did in fact suspect autism but failed to test? According to the legal definition of suspicion, yes. Under Timothy O. I just have a couple of other quick, also that when an education is inadequate is actually qualified in each of the cases cited by the district to include cases just like this where there was additional knowledge. In Avala, for example, this court said even where there was a diagnosis, that wasn't enough, sent it back to the district court and the district court said, well wait, there were three, and the family had the opportunity to discuss it with an IEP team. The family needs to have the opportunity to review this possible disability with the district. In this case, if the, by the way, there is no record, there's nothing in the record that shows that the 2018 consideration of autism was discussed in IEP. It was included in an assessment. But the, I'm sorry, let's see. Also, upon JR being diagnosed by the independent evaluator in 2021, JR's mother came to me with concerns about getting more literacy support. And I looked at the record, when I reviewed the records, I recommended that he be assessed for autism. This is the first time the mother ever suspected autism. But. Can I ask you about the tolling? So you mentioned at the beginning that this part of your argument was more about the specific representation prong. But just to start with the withholding of information prong, are you arguing that the school district withheld information that it was required to provide under the IDEA? Under the IDEA, yes, but. So what information were they statutorily required to provide that they didn't? They're statutorily required to provide assessment in all areas of suspected disability and then have. But I mean, the statute sort of talks about withholding of information that. Is there information that they had that you contend that they didn't, that they were required to provide to you under the statute? I understand your merits position that they should have suspected autism. The issue is that if that's always, that that would make the statute extend all the time. So I'm not sure that can be the test. Well, this court decided in Amanda J that where protocols that said suspected autism on them were not shared with the family and it prevented the family from seeking out assessment for autism. That was information that was required to be provided and it wasn't and it denied them a FAPE. And in fact, even the ALJ in this case decided that without assessment of autism and pragmatic speech, the mother was prevented from meaningfully participating in the IEPs and that was the basis for denial of FAPE. How about the specific, I'm still not sure, I'm clear by the way on your, I asked your opposing counsel this, was there information that was required to be provided under the statute that was not and her answer was a flat no. And so I take it you disagree with it, but I'm trying to probe what is the basis for that disagreement? Well, we don't, we've never disagreed that they were provided the procedural guidelines or anything like that. It's that they were prevented from being informed through assessment. That's the basis of our withholding. Because the school district should have done more to assess. They should have assessed in all areas of suspected disability as they are required to do and this court has defined suspected disability to include when there are symptoms of autism. Okay, so your claim is that their failure to do that work and then to give you, your client the results of that assessment was a withholding of information? Yes. But then misrepresentations are extensive and that's one important distinction that's actually factual between the ALJ and the district court, which I believe is owed review for clear error. The district, the ALJ did not decide, did not acknowledge the inner decision that the BASC scores actually indicated that autism was likely and that was concealed. She just found that the BASC scores were not required to be provided to the family. Then also, the ALJ did not address in her decision the fact that with JR's first IEP, staff were told not to share with his mother the significance of their concerns in 2012, which the district court just did address. The ALJ did not address the fact that in 2013, staff without telling JR's mother said that he should be referred to Tri-Counties Regional Center, quote, ASAP. This was never shared with the mother. We received those records in preparation for hearing. There are also the... I have to say, I'm still struggling with the same question that Judge Brest asked you because there's two different exceptions, right? Misrepresentation and withholding of statutorily mandated disclosures and I'm not clear on your, what facts you're relying on with regard to the second exception. It seems to me from the briefing and the district court's analysis that's really the failure to explain the scores. I don't see that requirement in the statute. Is that the basis of your claim for the statutory disclosure exception? That it's the failure to provide an explanation of the scores? I don't think that the failure to disclose is one of the stronger arguments, honestly, under the exceptions rule. I think that it does go to understanding that the mother had no reason to know nor should she have known. Right, so it goes back to kind of the pre-exception analysis. I understand your argument there. I'm not sure, though, what documents the statute mandates the school district to provide that really wasn't provided. So it doesn't seem like there's a basis for that exception. I think what the district court really got right and what is of most importance was the misrepresentation prong. They kept representing and even at the top of each assessment plan in 2012, 2015, 2018, or each assessment that was done, each triennial, it says we are assessing for eligibility and it cites to the Title 34 Code of Federal Regulation 300, which specifies that they are comprehensively assessing, which then also refers you specifically to the definition of autism eligibility. And the mother signed the assessment plans which said almost every possible area, usually it left out transition plans that aren't even applicable until he's older. So I don't know how a mother could know that he wasn't being assessed comprehensively in all areas. Well, that goes to the standard of knew or should have known, but I'm not sure how that, if that's a misrepresentation, that just blows a hole in the whole structural standard as to two years. I mean, there may just be reasonable disagreements on that, but does it rise to the level of misrepresentation as one of the exceptions? Absolutely in this case, because in this case, the mother's claim was that they failed to assess in all areas of suspected disability. So when they claim to every three years, and they don't, even though their own assessment measures tell them that they should, that's a misrepresentation for the facts of this case. But didn't she know that they, or should have known that they had not assessed for autism? I mean, they never told her that they did assess for autism. Well, no, because the underlying symptoms of autism were checked off there, the social, emotional, developmental, and speech and language sections of the assessment plans, each of those were checked. The assessment plans don't list categories of eligibility, they list the symptoms of them. And in each of those assessment plans, all of those applying to autism were checked. So I just, I think that the standard really needs to, as Judge Nguyen mentioned beginning, address the unique facts of each case. And I think that Judge Vera did an excellent job of combing through an extensive decision by the ALJ and addressing each of those facts. What he did was he decided some facts that the ALJ had left out. I do want to really, unless you have more questions about this, I wanna address the trust just real briefly. All right? And that is simply that my friend on the other side took this comment, no limitations on the SPED funds can be made out of context. First of all, that was way back when we were first discussing how the trust could be made, and we were informed by the trust attorney that if there were limitations on the SPED funds, that he would lose access to public benefits in Texas. So that was the limited purpose of that. We now have a signed trust that the parties have consented to, where it only applies for specific, it only provides funding. No money or funds go directly to JR or his family. It is specifically for four areas of compensatory education, ABA, speech and language, literacy, and then the needed transportation to those services. It is only good for three years of services, and any unused funds revert back to the school district. So this trust hasn't been funded yet? No, the district has been ordered to. They've repeatedly litigated to oppose that order. That's been denied. They have been ordered to, and they are frankly, and just ignoring the order, the district court's order at this point, which- That's what I was wondering, are the parties awaiting the outcome of this? There is a stay motion pending. Well, VUSD appears to be, JR is not. JR is hoping that the district court's order, and this court's order will be complied with so that he could start. It's also important to note that the trust is only to be funded over three different years, so he could start. There's no windfall here. It's simply the education that he should have been provided all along, and I think the amount for the trust is a large amount. That is what these services cost, and there was no objection to the hourly rate that was established for each of those services below. Right, thank you, counsel. Thank you, Your Honors. Judge Bennett, I think, hit the nail on the head by kind of obliquely, but recognizing that if the district court's judgment is affirmed, it would require a substantial revision of the IDEA, as well as modifying, great modification of this court's precedent. If the question of knew or should have known is of autism, no doubt the statute did not begin to run. Nobody knew or suspected autism, but if the standard is should have, then there is nothing to support that VUSD should have. These people are not incompetent. Nobody suspected it. It's a standard, as this court has said, it's the parent's knowledge of the facts. Those are undisputed. Parents clearly had knowledge of all the facts. An interesting thing that Ms. Marcus commented, first, the BASC scores, both the district court and Ms. Marcus misstated with that diagnostic considerations page. It said simply that JR's scores were relatively high compared to the general population for autism and for seven other diagnostic disabilities. It did not say it was likely or very likely or had a high probability of having autism. That is simply not what that one page said. Moreover, even JR's own expert did not say there was anything on that page that parents needed to know. But an interesting thing that counsel mentioned is the court's recognition of some miscommunication back in kindergarten, and that's found at footnote 21 of the court's decision, where the court relied on student's exhibit four, which was an assessment report, multi-pages, a common assessment report, not for autism, and tacked at the end of that report are two typed pages, to Kelly and Robin. And in those typed pages, it complains about the district's failure to communicate with parents about a considered placement in special day class in kindergarten. And then there's typed Sharon. That document is not dated. There is no evidence taken on that document. None of those people, Sharon, Kelly, or Robin, none of them testified. The only evidence was mom said, no, I didn't get that document until 2020. So we don't know when that document was written, who, if anybody, it was given to, what, if anything, any of those people did with the document. And yet this district court took that unauthenticated document that utterly lacked foundation and had zero indicia of reliability, and took the matter stated therein, accepted as truth, the matter stated therein, to find a higher level of scienter in its conclusions of misrepresentation. That's at best remiss in analysis. Going back to the 2015 BASC, this is what the district court said. According to that, J.R.'s probability of autism was relatively high. However, Beeley wrote in her 2015 report that J.R.'s scores only indicated that he sometimes behaves in ways that seem strange. This statement was objectively false and misleading. So can you explain why you think the district court was wrong on this? Yes, because the diagnostic considerations page says only that J.R.'s scores are relatively high compared with the rest of the population for autistic disorder, and as well as seven other disorders. Moreover, Beeley did not attribute that document or any of her assessments or any of her conclusions. The statement that J.R. sometimes behaves in ways that seem strange, she attributed to one of J.R.'s teachers who told her that. And she said, J.R.'s teacher said, he sometimes behaves in ways that seem strange. Her report is comprehensive. She addresses everything in great detail. And the district court took that one statement way out of context and attached it to a misstatement of the diagnostic considerations. So there's no more questions. I'll be done. Thank you, counsel. Thank you to both sides for your very helpful arguments this morning. The matter is submitted.
judges: NGUYEN, BRESS, Bennett